**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NAV SARAO FUTURES LIMITED PLC AND NAVINDER SINGH SARAO,<br><br>Defendants. | No. 15-cv-3398<br><br>JUDGE ANDREA R. WOOD |

**CONSENT ORDER OF**
**PRELIMINARY INJUNCTION AND OTHER ANCILLARY RELIEF**
**IN RESOLUTION OF PLAINTIFF'S MOTION FOR STATUTORY RESTRAINING**
**ORDER, PRELIMINARY INJUNCTION AND OTHER EQUITABLE RELIEF**

On April 17, 2015, Plaintiff Commodity Futures Trading Commission (the "CFTC"), filed a Civil Complaint against Defendant Navinder Singh Sarao ("Mr. Sarao") that seeks injunctive and equitable relief for violations of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. §§ 1 *et seq.* (2012), and the Commission Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.* (2014) (the "Civil Enforcement Action"), together with an *Ex Parte* Motion for Statutory Restraining Order, Preliminary Injunction and Other Relief [ECF Doc. 7] (the "CFTC Motion"). That same day, the Court entered an order granting the portion of the CFTC Motion that sought a statutory restraining order ("SRO") [ECF Doc. 11] and certain other interim relief. The portion of the CFTC Motion that sought a preliminary injunction remained pending and the Court scheduled a Show Cause Hearing to address it.

Mr. Sarao and the CFTC (together, the "Parties")[1] subsequently reached an agreement to resolve the CFTC Motion on consent, according to certain agreed-upon terms. On June 26, 2015, the Parties submitted those terms to the Court by filing a Joint Motion for Entry of Consent Order of Preliminary Injunction and Other Ancillary Relief in Resolution of Plaintiff's *Ex Parte* Motion for Statutory Restraining Order, Preliminary Injunction and Other Equitable Relief [ECF No. 41] ("Joint Motion"), together with a proposed order that would grant it. The Court has considered the entire record in this matter and concludes that there is good cause to believe this is a proper case for granting a preliminary injunction to preserve the status quo. The Court hereby grants the Consent Order of Preliminary Injunction and Other Ancillary Relief in Resolution of Plaintiff's *Ex Parte* Motion for Statutory Restraining Order, Preliminary Injunction and Other Equitable Relief ("Consent Preliminary Injunction."), on the terms to which the Parties have agreed.

**THE PARTIES AGREE, AND THE COURT HEREBY FINDS, THAT:**

1. This Court has jurisdiction over Mr. Sarao for purposes of this Civil Enforcement Action and over the subject matter of this Civil Enforcement Action, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012).

2. Mr. Sarao has accepted service of process for purposes of this Civil Enforcement Action, in accordance with applicable rules and law.

3. This Court is a proper venue for this Civil Enforcement Action pursuant to Section 6c(e) of the Act 7 U.S.C. § 13a-1(e) (2012).

[1] Nav Sarao Futures Limited PLC ("Sarao Futures") is not a party to the proposed Consent Preliminary Injunction, has not answered the CFTC's Complaint and is unrepresented in this matter.

4. Mr. Sarao consents to the entry of this Consent Preliminary Injunction without: (i) an adjudication of the merits on any issue of fact or law; (ii) waiving any privilege or right under the United States Constitution, including the Fifth Amendment thereof; and (iii) admitting or denying the allegations of the Civil Complaint (except as to service, venue, personal jurisdiction and subject matter jurisdiction, to which he consents solely for the purposes of this Civil Enforcement Action).

5. Mr. Sarao's consent to the entry of this Consent Preliminary Injunction has been given voluntarily, and no promise or threat has been made by the CFTC or by any member, officer, agent or representative thereof, to induce him to consent to the entry of this Consent Preliminary Injunction.

6. Mr. Sarao has satisfied in full the original requirement of an Accounting that was set forth in Paragraph 16 of this Court's SRO.

7. The Parties waive the entry of findings of fact and conclusions of law for purposes of this Consent Preliminary Injunction pursuant to Rule 52 of the Federal Rules of Civil Procedure, and the Court accepts that waiver.

**INJUNCTIVE RELIEF GRANTED**

As of the date of the entry of this Order, it is hereby **ORDERED AND ADJUDGED** that:

8. Mr. Sarao, as well as all persons insofar as they are acting in the capacity of officers, agents, servants, employees, or attorneys of Mr. Sarao, and all other persons insofar as they are properly considered to be acting in active concert or participation with Mr. Sarao, who receive actual notice of this Order by personal service or otherwise, are restrained, enjoined and prohibited through and including the day on which this Court enters an order resolving this Civil

Enforcement Action (the "Final Order"), from directly or indirectly doing any of the following, absent further order of the Court:

A. Engaging in conduct in violation of Sections 6(c)(3) and 9(a)(2) of the Act, 7 U.S.C. §§ 9(c)(3) and 13(a)(2) (2012), and Regulation 180.2, 17 C.F.R. § 180.2 (2014), by directly or indirectly, manipulating or attempting to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, including any contract market;

B. Engaging in conduct in violation of Section 4c(a)(5)(c), 7 U.S.C. § 6c(a)(5)(C) (2012), of the Act by engaging in any trading, practice or conduct on or subject to the rules of a registered entity that is of the character of, or is commonly known to the trade as, "spoofing"; and

C. Engaging in conduct in violation of Section 6(c)(1), 7 U.S.C. § 9(c)(1) (2012), of the Act and Regulation 180.1, 17 C.F.R. § 180.1 (2014), by directly or indirectly, using or employing, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance in contravention of any Commission rule or regulation.

9. Mr. Sarao is further restrained, enjoined and prohibited through and including the date on which the Court enters the Final Order, from directly or indirectly doing any of the following, absent further order of the Court:

A. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, as amended, 7 U.S.C. § 1a(40) (2012);

B. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2014)) for his own personal account or for any account in which he has a direct or indirect interest;

C. Having any commodity interests traded on his behalf;

D. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

E. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

F. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such

registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014); and/or

G. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2014)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)) registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014).

**MODIFIED ASSET FREEZE GRANTED**

It is hereby further **ORDERED AND ADJUDGED** that:

10. Except to the extent modified in this Consent Preliminary Injunction or by further order of this Court, the terms of the SRO, including the asset freeze provisions set forth in Paragraphs 10 through 12 of the SRO, will continue in full force and effect.

11. *Establishment of Escrow Account and Appointment of Monitor.* Kobre & Kim LLP, which represents Mr. Sarao in this Civil Enforcement Action, will establish a bank account at HSBC New York (the "Escrow Account") into which Mr. Sarao will use his best efforts to aggregate all of the following, regardless of where in the world they may currently be located: (i) the assets owned or controlled by Mr. Sarao, whether directly or indirectly; (ii) the assets owned or controlled by Sarao Futures, whether directly or indirectly;[2] and (iii) the assets owned or controlled by International Guarantee Corporation, whether directly or indirectly.

12. Mr. Sarao and the CFTC will agree upon a third-party monitor ("Monitor") to oversee the Escrow Account. Mr. Sarao will give the Monitor irrevocable and binding instructions to pay out the funds in the Escrow Account according to the Final Order. During the period before the Escrow Account reaches the Specified Threshold (defined below in Paragraph 17.D), the Monitor will inform the CFTC of the balance contained in the Escrow Account on a

[2] Mr. Sarao was the sole owner and employee of Sarao Futures at all relevant times. Sarao Futures is not a party to the Consent Preliminary Injunction.

monthly basis. Throughout the life of the Escrow Account, the Monitor will inform the CFTC whenever additional assets are added to the Escrow Account.

13. Until further order of this Court, the Monitor will oversee the Escrow Account and its contents in accordance with the terms of this Consent Preliminary Injunction. The Monitor will be compensated for services rendered from the funds in the Escrow Account.

14. *Funding of the Escrow Account*. The Escrow Account will be funded according to the following terms:

A. All funds in Mr. Sarao's existing accounts at R.J. O'Brien, Bet Fred Online, Bet Victor, Paddy Power, William Hill and HSBC (the "Liquid Funds")[3] will immediately be transferred into the Escrow Account. Each of those entities is hereby specifically authorized to do what is necessary, upon receipt of a request submitted by Mr. Sarao or his attorneys, to transfer or otherwise deposit any of the Liquid Funds into the Escrow Account. Similarly, HSBC New York is hereby specifically authorized to receive all such Liquid Funds in the Escrow Account and is bound by the terms and conditions of this Consent Order.

B. Mr. Sarao is hereby permitted to, and will, use his best efforts to obtain a loan or other funds from International Guarantee Corporation (the "IGC Funds") and to have the IGC Funds transferred or otherwise deposited into the Escrow Account.

i. International Guarantee Corporation is hereby specifically authorized, upon request of Mr. Sarao or his attorneys, to use its best efforts to extend the IGC Funds to Mr. Sarao as quickly as possible, and to transfer or otherwise deposit the IGC Funds into the Escrow Account (including by withdrawing, liquidating, redeeming, or otherwise

[3] The Liquid Assets comprise the total known assets of Mr. Sarao and Sarao Futures. Should any further assets of either Mr. Sarao or Sarao Futures become known, Mr. Sarao will make best efforts to cause those assets to be transferred into the Escrow Account in accordance with the terms of this Consent Preliminary Injunction.

transferring any assets of International Guarantee Corporation from which the Loan Funds may be obtained or derived).

ii. Likewise, any person or entity in possession of any asset of International Guarantee Corporation, including, but not limited to, IXE Group AG, IXE Asset Management AG and IXE Trading AG, is hereby specifically authorized, upon International Guarantee Corporation's request or consent, to take any necessary steps to have that asset transferred or otherwise deposited into the Escrow Account. This includes, but is not limited to, any interim releases, withdrawals, redemptions, transfers, or other steps that may be required in order to have the asset moved from its current location; transformed into IGC Funds; and then deposited or otherwise credited to the Escrow Account.

iii. In addition, HSBC New York is hereby specifically authorized to receive all such IGC Funds in the Escrow Account, and to make payments from the Escrow Account at the direction of the Monitor.

15. After the initial funding of the Escrow Account as described in Paragraph 14, above, Mr. Sarao will continue to make his best efforts to cause any additional remaining assets of International Guarantee Corporation (the "Additional IGC Assets") to be deposited (or otherwise credited) into the Escrow Account.

A. Mr. Sarao, his attorneys, International Guarantee Corporation and any person or entity that has possession of any such Additional IGC Asset are hereby specifically authorized, upon International Guarantee Corporation's request or consent, to take any necessary steps to have that Additional IGC Asset transformed into loan funds ("Additional IGC Funds") and to have the Additional IGC Funds transferred or otherwise deposited into the Escrow Account.

B. This includes, but is not limited to, any interim releases, withdrawals, redemptions, transfers, or other steps that may be required in order to have the asset moved from its current location; transformed into Additional IGC Funds; and then deposited or otherwise credited to the Escrow Account.

C. In addition, HSBC New York is hereby specifically authorized to receive all such IGC Additional Funds in the Escrow Account.

16. Notwithstanding anything that is ostensibly to the contrary in either this Consent Preliminary Injunction or in the SRO, the asset freeze does not foreclose International Guarantee Corporation from using up to £82,747.08 (the "Excluded International Guarantee Corporation Assets") to pay the approximately £82,747.08 in liabilities associated with the administration and / or management of certain assets (the "Approved International Guarantee Corporation Liabilities") that International Guarantee Corporation has disclosed to the CFTC as due and owing as of June 26, 2015. Once the Escrow Account has reached the Specified Threshold identified in Paragraph 17.D, the Mediator will pay from the Escrow Account reasonable additional amounts for similar liabilities that International Guarantee Corporation incurs in connection with the administration and / or management of relevant assets, up to a maximum of £75,000 for any six month period.

A. Similarly, any person or entity in possession of the Excluded International Guarantee Corporation Assets is hereby authorized, upon International Guarantee Corporation's request or consent, to take any necessary steps to have the Excluded International Guarantee Corporation Assets applied to extinguish the Approved International Guarantee Corporation Liabilities.

B. This includes, but is not limited to, any interim releases, withdrawals, redemptions, transfers, or other steps that may be required in order to have the Excluded International Guarantee Corporation Assets moved from their current location; transformed into whatever form is necessary; and then paid to the persons or entities to whom the Approved International Guarantee Corporation Liabilities are owed.

17. *The Monitor's Handling of the Escrow Account.* The Monitor will administer the contents of the Escrow Account in accordance with the following terms:

A. The Liquid Funds, once deposited (or otherwise credited) into the Escrow Account, will remain in the Escrow Account and will not be used to pay any expenses.

B. After the Liquid Funds have been deposited (or otherwise credited) into the Escrow Account, the Monitor will pay from the Escrow Account: (i) up to $2,500,000 in fees, costs and expenses relating to Mr. Sarao's criminal defense (the "Initial Criminal Fees"); provided, however, that the Monitor first reviews the corresponding invoices to confirm that such amounts relate, in the Monitor's judgment, to criminal fees, costs and expenses; and (ii) the full amount of Mr. Sarao's bail in the United Kingdom as of the date of the Consent Preliminary Injunction (the "Bailed Funds").

C. When the Bailed Funds are ultimately released, they will not be returned to Mr. Sarao, but will instead revert directly to the Escrow Account. The Bailed Funds will then be overseen by the Monitor in accordance with the terms of this Consent Preliminary Injunction, unless the Court subsequently orders otherwise.

D. The "Specified Threshold" is $30,000,000. If, at any point, the balance of the Escrow Account exceeds the Specified Threshold, then the Monitor will use the Additional Escrowed Funds to pay the following three categories of expenses, to the extent that doing so

will not cause the balance of the Escrow Account to fall below the Specified Threshold and are otherwise consistent with the terms of this Consent Preliminary Injunction:

i. The criminal fees, costs and expenses of Mr. Sarao that exceed the $2,500,000 that is referenced above in Paragraph 17.B (the "Additional Criminal Fees").

ii. The attorneys' fees, costs and expenses of Mr. Sarao that are specific to his defense against this Civil Enforcement Action (the "Civil Defense Fees"). The Mediator will first review the corresponding invoices to determine that such Civil Defense Fees are not, in the Monitor's judgment, clearly unreasonable; and

iii. Mr. Sarao's reasonable living expenses, adequately documented, which will include expenses that are necessary to meet the terms of any court-approved bail package in the United States (the "Reasonable Living Expenses").

18. *Failure Fully to Fund Escrow Account*. If, by February 1, 2016, the balance of the Escrow Account has not reached the Specified Threshold, then the CFTC may apply to the Court and seek additional remedies.

19. *Reservations by Mr. Sarao*. The consent and / or agreement of Mr. Sarao to this Consent Preliminary Injunction, and any statements contained in this Consent Preliminary Injunction, are limited to this Civil Enforcement Action. Mr. Sarao expressly reserves all rights, entitlements, defenses, claims, and / or arguments that are (or that may be) available to him in connection with any action, investigation, litigation or proceeding other than this Civil Enforcement Action.

20. *Service of this Order*. Copies of this Order may be served by any means, (including by way of personal service, Federal Express or other commercial overnight service, and by email or facsimile), upon any financial institution or other entity or person that may have

possession, custody, or control of any documents or assets that may be subject to any provision of this Consent Preliminary Injunction or the SRO.

21. *Retention of Jurisdiction.* This Court retains jurisdiction of this matter for all purposes related to this Civil Enforcement Action.

It is further hereby **ORDERED AND ADJUDGED** that Mr. Sarao will respond to the Civil Complaint in accordance with Federal Rule of Civil Procedure 12, by no later than seven (7) days after the date on which this Consent Preliminary Injunction is entered.

**IT IS SO ORDERED.**

Dated this 29th day of June, 2015

ANDREA R. WOOD
UNITED STATES DISTRICT JUDGE